IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TEAM AIR EXPRESS, INC. d/b/a
TEAM WORLDWIDE

and

TEAM WORLDWIDE, INC.

          Plaintiffs,

v.                                                                    Civil No: 4:06cv13

DEPARTMENT OF THE ARMY
MILITARY SURFACE DEPLOYMENT
AND DISTRIBUTION COMMAND
OPERATIONS CENTER

and

DEPARTMENT OF THE NAVY
Office of the General Counsel

          Defendants.

<u>OPINION AND ORDER</u>

    This matter came before the Court on Plaintiffs Team Air Express, Inc. d/b/a Team Worldwide and Team Worldwide, Inc. [collectively "Team Air"]'s Emergency Motion for a Temporary Restraining Order [TRO] and Preliminary Injunction.  (Doc. 2.)  The Court heard the matter on January 26, 2006, and ruled from the bench Granting Team Air's Motion for a Temporary Restraining Order.  This Order more fully explains the Court's ruling.

<u>Factual Background and Procedural History</u>

Plaintiffs' complaint arises out of similar operative facts as <u>United States of America, *ex rel* Paul Watkins v. Team Air Express, Inc.,</u> 2:04cv117, a case pending before the Court, and <u>Team Air Express, Inc., *etc.* v. Department of the Army, *etc.*,</u> 4:05cv160, a case that was dismissed pursuant to FED. R. CIV. P. 41(a)(1)(I) on December 9, 2005 [hereinafter "the Civil Case" and "Team Air I," respectively]. The background and history set forth below are derived from evidence tendered in Team Air I and the instant case and are preliminary factual findings based on the existing records and for the purpose of this motion only.

Team Air provides accounting and communication services to allegedly independent freight brokers across the country, all of whom do business under the common trade name "Team." <u>See</u> Accounting and Communications Agreement (ACA). According to the ACA, Team Air is merely a vendor of accounting and communications services - not a franchisor. Team Air provides its services in exchange for a percentage, usually around 10%, of an independent broker's domestic revenue. Expedited Cargo Service, Inc. (ECS) is a local freight forwarding service provider owned by Steve Wiley. On April 4, 2000, ECS became an independent Team Freight Broker for the Norfolk, Virginia, area.

In March of 2004, Paul Watkins, as a relator, filed a civil action against Team Air and Steve Wiley alleging violations of the false claims act. On March 22, 2005, the Government intervened and served Team Air with the complaint in the Civil Case. A month later, the Government filed an amended complaint adding ECS as a defendant.

On July 18, 2005, Steve Wiley pled guilty to conspiring to pay illegal gratuities, in violation of 18 U.S.C. §§ 371 and 201(C)(1)(A). As part of his plea, Steve Wiley entered into an

agreed Statement of Facts (SOF). According to the SOF, Steve Wiley is the point of contact in

Norfolk, Virginia, for Team Air. In August of 2003, Steve Wiley became aware that one of his

employees had discussed providing benefits to a government contractor in return for the

contractor awarding freight transportation contracts to ECS regardless of whether those contracts

would have been awarded under the competitive system in place. Steve Wiley and the employee

made 41 payments, totaling $76,000, to the government contractor from August, 2003, through

August, 2004.

When Team Air learned that Steve Wiley pled guilty as described above, Team Air

terminated its relationship with ECS under the terms of the ACA. One month later, the Surface

Deployment & Distribution Command Operations Center (SDDC) Freight Carrier Review Board

(CRB) notified Team Air that it would hold a hearing pursuant to the Procedures for

Disqualifying and Placing Transportation Service Providers (TSPs) in Non-Use. The notification

focused on the reports of criminal activity involving Steve Wiley. On October 18, 2005 - after

granting Team Air an extension of time to prepare, but denying Team Air a second extension -

the CRB held a hearing. At the hearing, the CRB posed questions to Team Air and requested

additional documents from Team Air.

Team Air responded to the CRB's questions and submitted extensive documentation of

its ACA, its quality control program, and the steps it took once it learned of Steve Wiley and

ECS's misconduct. The ACA contains a clause that indicates specifically "neither [Team Air

nor the independent freight broker] has the authority to incur any obligation or responsibility on

behalf of the other." On November 8, 2005, the CRB held a second day of hearings. Fifteen

days later, the CRB sent Team Air a letter informing them that the CRB would suspend Team

3

Air's ability to act as a freight service provider for one year, effective November 28, 2005. As grounds for the suspension, the CRB by letter faxed November 23, 2005, cited Team Air's lack of knowledge of government shipping rules and procedures and lack of institutional control to ensure business ethics. The CRB letter suggested that Team Air shields itself from accountability for the conduct or misconduct of the independent freight brokers, but made no direct finding regarding the Wiley conviction nor any mention of it.

On November 25, 2005, Team Air filed Team Air I, alleging violations of the Administrative Due Process Act 5 U.S.C. §§ 500 *et seq*. Simultaneously, Team Air filed a motion for a TRO and Preliminary Injunction. The Court set Team Air's motion for hearing, but Team Air and the SDDC entered into a Settlement Agreement, the general terms of which called for Team Air to dismiss Team Air I in exchange for the SDDC staying disqualification of Team Air. Since Team Air was no longer disqualfied, the SDDC approved Team Air's Craft Program Tender and Fuel Surcharge Tender on December 15, 2005, and approved three of Team Air's Motor Tenders on January 10, 2006. Implicit in those approvals was the SDDC's recognition that Team Air won its appeal of the CRB's action and the SDDC's finding that Team Air was in compliance with the applicable rules and regulations.

Two days later, however, on January 12, 2006, Team Air received notification from the Navy that the Navy was initiating debarment actions against Team Air for Wiley's criminal conduct. Team Air was placed on the Government Service Agency's Excluded Parties List System (EPLS) while the debarment action progressed. Being placed on the EPLS disqualified Team Air and its brokers from obtaining new contracts with the federal government. To compound matters, one day later, on January 13, 2006, Team Air received notification from

SDDC that it was removing Team Air from the approved carrier list pending the Navy's debarment, which disqualified Team Air from even those contracts that it could have performed while debarment was pending.

Team Air contends that "the facts underlying the Navy's debarment process and those underlying the SDDC disqualification process are one and the same - Wiley's guilty plea." Team Air II Compl. at p. 17. Consequently, Team Air argues that the Navy's proposed debarment violates the Administrative Due Process Act, 5 U.S.C. §§ 500 *et seq*., and the SDDC's corresponding action violates the terms of its Settlement Agreement with Team Air. At the same time as Team Air filed its complaint in Team Air II, it also filed an Emergency Motion for Temporary Restraining Order [TRO] and Preliminary Injunction, which is the subject of the present ruling. In the TRO Motion, Team Air asserts that it will suffer immediate and irreparable injury unless the Court enjoins the Navy and the Army, through its agent the SDDC.

The Army and the Navy jointly argued through counsel that Team Air had not exhausted its administrative remedies; that ECS was a "branch office" of Team Air and therefore Team Air was chargeable with Wiley's criminal misconduct; and that the SDDC decision on appeal in favor of Team Air was moot. Neither the Navy or the Army has filed pleadings or presented any evidence since Team Air's filing on January 20, 2006, nor did the Army respond to Team Air I, and in neither instance were responsive pleadings due prior to the scheduled hearings. Accordingly, the only evidence before the Court has been presented by Team Air, although counsel for the Navy and Army has tendered several verbal proffers.

<u>Standard of Review</u>

To obtain a preliminary injunction the traditional standard requires the Court to evaluate four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. <u>Manning v. Hunt</u>, 119 F.3d 254, 263 (4th Cir. 1997) (quoting <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991)). The plaintiff bears the burden of establishing that the Court should grant a preliminary injunction or temporary restraining order. <u>Id.</u> (quoting <u>Hughes Network Systems, Inc. v. Interdigital Comm. Corp.</u>, 17 F.3d 691, 693 (4th Cir. 1994)).

The Fourth Circuit follows the balance-of-hardship test. <u>See</u> <u>Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manu. Co., Inc.</u>, 550 F.2d 189, 195 (4th Cir. 1977); <u>see also</u> <u>Manning</u>, 119 F.3d at 263. The Court must first "balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." <u>Id.</u> "The harm demonstrated by the plaintiff must be 'neither remote nor speculative, but actual and imminent.'" <u>Manning</u>, 119 F.3d at 263 (internal quotations omitted). If the hardship balances in favor of the plaintiff, then the likelihood of success of the claim is displaced and the plaintiff must only show that questions raised concerning the merits are "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." <u>Blackwelder</u>, 550 F.2d at 195. The importance of the merits of the case increase as the "probability of irreparable injury diminishes." <u>Id</u>.

<u>Discussion</u>

Team Air offered evidence and argued that the Navy's initiation of a debarment action and placement of Team Air's name on the EPLS, combined with the SDDC's removal of Team Air's name from the approved carrier list, economically crippled Team Air. This is particularly so because, although a contractor on the EPLS is allowed to continue performance of existing contracts, transportation service contracts are of such short duration that Team Air ran out of work within days of being listed on the EPLS. In addition, Team Air introduced evidence that it had been directly harmed because the SDDC issued a customer advisory that not only informed the public that the Navy had proposed that Team Air be debarred, but did so in a way that connected Team Air with the indefinite debarments and other punishment accorded Steve Wiley, ECS, and Barbara Speller, the government contracting official. Notwithstanding the Government's argument to the contrary, the Court FINDS from the evidence before it that Team Air made a *prima facie* showing of significant irreparable harm.

The Government presented no evidence that the Defendants are likely to suffer harm if a TRO is granted. It is true that a government agency suffers harm when contracting officials accept bribes to award contracts to bidders who submit overpriced bids. In this case, however, three factors reduce the risk of loss the Government faces if Team Air is not proposed for debarment and placed on the EPLS. First, the only ground for debarring Team Air is the misconduct of Steve Wiley and ECS. Out of the many locations where Team Air has allegedly independent brokers, the only evidence of misconduct was in the Norfolk area. Second, since Team Air's termination of its business relationship with Steve Wiley and the Government's debarment of him, no further irregularities have been uncovered at any other Team Air location.

That the SDDC approved Team Air's Motor Tenders on January 10, 2006, is evidence of Team Air's current fitness as a TSP. Third, and finally, the Court notes from a proffer by defendant's counsel, that although there have been no instances of misconduct by other Team Air brokers, criminal charges were filed against another government contracting official for similar offenses, that occurred in the Norfolk area but are unrelated to Team Air and ECS. This fact indicates that the Norfolk contracting office, not Team Air's national network, poses a more serious risk of future economic injury.

Balancing the hardships in this case, the Court FINDS that the likelihood of irreparable harm to Team Air if a TRO is not granted far outweighs the likelihood of harm to the Army and Navy if a TRO is granted. Accordingly, Team Air must only show that questions raised concerning the merits of the proposed debarment are "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Blackwelder, 550 F.2d at 195. In this case, Team Air has shown and the Defendants have conceded that the propriety of debarment under Federal Acquisition Regulation 9.406-5(a), which allows for the imputation under certain circumstances of criminal conduct of individuals associated with a contractor, hinges on the nature of the relationship between Team Air and its independent brokers. The Civil Case likely hinges on the exact same issue. Therefore, the Court FINDS that it would be inappropriate for debarment to be based on a relationship that has been assumed but not proven, and is contrary to the general principle that one party is not usually chargeable criminally or civilly with the criminal conduct of another.

Turning to the fourth factor in the Blackwelder analysis, the Court believes that while the public interest is tied closely to the Government's interest in issuing contracts based on merit

8

rather than bribes, the public interest is also served by providing citizens with due process.

Based on the record before it, the Court FINDS that Team Air has not been afforded due process

for three reasons:

(1)  The timeline of Army and Navy action defies coincidence.

> January 10, 2006 - Team Air won its appeal of the CRB action.
>
> January 12, 2006 - Navy notifies Team Air that it is initiating
> debarment against Team Air for Wiley's criminal conduct.
>
> January 13, 2006 - Army notifies Team Air that it is removing
> Team Air from the approved carrier list pending the Navy's
> debarment.

This evidence suggests that the Army and Navy were working together to overturn the effect of

Team Air's favorable appeal.

(2)  The Navy assumed Team Air's accountability for Steve Wiley's criminal actions

without a hearing and without furnishing Team Air with the criminal investigation that supported

the indictment and prosecution of him.

(3) Although the Federal Acquisition Regulation allows a contractor pending debarment

to complete current contracts and perform subcontracting on contracts valued at less than

$25,000, neither of these procedural safeguards protect Team Air under the circumstances

present in this case.  Since transportation contracts are of limited duration, Team Air does not

have large, long-lasting contracts that it can execute while it participates in proposed debarment

administrative adjudication.  And because the Army removed Team Air from the approved

carriers list, Team Air cannot compete for subcontracts during that time either.

<u>Conclusion</u>

For the reasons stated in this Opinion and Order, the Court temporarily enjoins the

Department of the Army and the Department of the Navy in the manner set forth in the temporary

restraining order entered simultaneously herewith.

The Clerk is **REQUESTED** to mail and transmit by facsimile a copy of this Opinion and

Order and the accompanying Temporary Restraining Order to all counsel of record.

It is so **ORDERED**.


                              /s/
                        ————————————————————————
                        HENRY COKE MORGAN, JR.
                        SENIOR UNITED STATES DISTRICT JUDGE



Norfolk, Virginia
January 27, 2006